IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

In re:

JODY LEE BEACH and
RHONDA B. BEACH                          Bankruptcy Case No.  21-10762-t13

     Debtors.

---

IRON HORSE WELDING, LLC,

     Appellant,

v.                                              1:23-cv-00258-KWR-JMR

JODY LEE BEACH and
RHONDA B. BEACH

     Appellees.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on Appellant Iron Horse Welding, LLC's

bankruptcy appeal. Doc. 10. Appellees filed a response. Doc. 12. Appellant filed a reply.

Doc. 13. The parties filed simultaneous supplemental briefs, as ordered by the Court. Docs. 14,

15. District Judge Kea W. Riggs referred the case to me pursuant to 28 U.S.C. §§ 636(b)(1)(B)

and (b)(3) to conduct hearings, if warranted, and to perform any legal analysis required to

recommend to the Court an ultimate disposition of this case. Doc. 2. Having reviewed the

parties' submissions and the relevant law, I recommend that the Court AFFIRM the Bankruptcy

Court's ruling.

I.      **Background**

On June 18, 2021, Jody Lee Beach and Rhonda B. Beach, a married couple, filed for

Chapter 13 bankruptcy. App'x[1] at 1–2; *see also* 11 U.S.C. §§ 1301–1330. Iron Horse Welding,

LLC ("Iron Horse"), the appellant, is the Beaches' largest creditor. App'x at 652. Twenty-nine

proofs of claim were filed in the bankruptcy matter. Doc. 10 at 10. However, only one proof of

claim is relevant here: Iron Horse's claim that the Beaches owe it $71,767.67 for an unpaid loan.

*Id.* (also referred to as "Proof of Claim #10").

As proof that this loan exists, Iron Horse submitted three checks, totaling $64,150. Proof

of Claim #10, Claims Register, *In re Beach*, No. 21-10762-t13 (Bankr. D.N.M. filed June 18,

2021). The three checks are not addressed to either debtor. *Id.* Instead, two of the checks were

made out to "Stewart Title." *Id.* The third check was made out to "Allen Grisham," Iron Horse's

owner. *Id.* Iron Horse did not provide a written loan agreement. Iron Horse did not provide a

promissory note. Iron Horse did not provide any record of payments on this alleged loan. Instead,

along with the checks and the standard Official Form 410, Iron Horse submitted the following

document:

---

[1] All references to an appendix are to the appendix to Iron Horse's brief in chief, which contains
the record of the underlying bankruptcy case. Doc. 11.

<div style="border:1px solid">

**IRON HORSE WELDING, LLC'S**

**PROOF OF CLAIM #2**

**LOAN TO DEBTORS FOR HOUSE PURCHASE**

</div>

In the Summer 2014, IRON HORSE WELDING loaned the Debtors $64,150 to purchase their home that they are living at this time. Iron Horse also loaned the Debtors $19,178.72 for "home fix-up." Iron Horse's 3 checks evidencing the loan are attached hereto as follows:

| | | |
|---|---|---|
| July 2014 | Stewart Title - "good faith deposit" | 4,150.00 |
| August 2014 | Stewart Title - down payment and closing costs | 40,821.28 |
| August 2014 | Advance to pass-through acct for "home-fix up" | 19,178.72 |
| | | |
| Total Loan | | $64,150 |

The Debtors were making payments to Iron House until they both quit their employment with Iron Horse in August 2019, at which time the unpaid balance was $62,002.31 plus 8.75% from September 1, 2019. (Note, the Debtors did not make all of their monthly payments.) The interest from September 1, 2019 through June 18, 2021 is $9,765.36.

The total amount of this claim is $71,767.67.

This alleged loan was the subject of a state court action before the Honorable Judge Brickhouse. *Iron Horse Welding, LLC v. Jody Beach*, No. D-202-CV-2019-07107 (2d Jud. Dist. Ct. filed Sept. 11, 2019). However, the state court was unable to decide whether the Beaches actually owed this money because the case was stayed when the Beaches filed for bankruptcy.

3

Doc. 10 at 21; *see* 11 U.S.C. § 302(a)(1) (automatic bankruptcy stay). The Beaches deny that the money was a loan. App'x at 652. In their bankruptcy schedules, the Beaches consistently scheduled the alleged loan debt as "contingent," "unliquidated," and "disputed." *Id*. at 46 (Beaches' initial schedule E/F); *Id.* at 178 (first amended schedule E/F).

The Bankruptcy Court ruled twice that the Beaches were eligible for Chapter 13 bankruptcy—once in an order on a motion to dismiss, and again in a motion to reconsider the motion to dismiss. *Id*. at 273–83; *Id.* at 651–62.

Notably, the Beaches and Iron Horse's owner, Allan Grisham, were once good friends. *Id*. at 565. The Beaches used to be employed by Iron Horse. *Id.* Apparently, though, "[t]he relationship ended very badly." *Id.* The Beaches alleged that Iron Horse has a "personal vendetta" against them. *Id*. at 621. They also accuse Iron Horse of "'running up the fees' in this case to punish [debtors]," *Id*. at 661, "gross mischaracterization[s]," Doc. 12 at 1, and engaging in "scorched earth litigation against Debtors doing everything in its deep pocket power to bury debtors," *Id*. at 617. At one point, the Bankruptcy Court observed: "A typical chapter 13 case in this district costs about $5,000 in attorney fees. Iron Horse has forced Debtors to spend ten times that amount. The extra $45,000 would have gone to unsecured creditors, including Iron Horse." *Id*. at 579.

## II.    Issues on Appeal

Iron Horse appeals the Bankruptcy Court's determination that the Beaches were eligible for Chapter 13 bankruptcy. Doc. 10 at 13–28. In particular, Iron Horse argues that:[2]

---

[2] Iron Horse also affirmatively argues that its appeal is not mooted by the confirmation of the Beaches' bankruptcy plan. Doc. 10 at 28–30. The Beaches, however, never alleged that the appeal is moot. As such, I do not address whether the appeal is moot.

(1) the Bankruptcy Court erred by ruling that a specific debt (Proof of Claim #10) was unliquidated;

(2) because of that liquidity error, the Bankruptcy Court erred by ruling that the Beaches were under the noncontingent, liquidated, unsecured debt limit for Chapter 13 eligibility; and

(3) the Bankruptcy Court erred by ruling that the eligibility debate was "academic." *Id.* The Beaches respond by defending the Bankruptcy Court on each point. Doc. 12 at 2–9. In the alternative, the Beaches argue that Iron Horse is precluded from challenging the Beaches' eligibility on appeal because of *res judicata*. *Id.* at 9–10.

As discussed below, I find that the Bankruptcy Court correctly ruled that the Beaches were eligible for Chapter 13 bankruptcy. *Infra* Section IV.A. Although, I also find that Iron Horse was not precluded from challenging the Beaches' eligibility on appeal. *Infra* Section IV.B.

## III.     Standard of Review

In reviewing the Bankruptcy Court's final judgment, the Court must "apply the same standards of review that govern appellate review in other cases." *Country World Casinos, Inc. v. Tommyknocker Casino Corp. (In re Country World Casinos, Inc.)*, 181 F.3d 1146, 1149 (10th Cir. 1999). Thus, questions of law are reviewed *de novo* and discretionary decisions for abuse of discretion. *Busch v. Busch (In re Busch)*, 294 B.R. 137, 140 (B.A.P. 10th Cir. 2003) (citing *Pierce v. Underwood*, 487 U.S. 552, 558 (1988)). The Bankruptcy Court's findings of fact bind the Court unless they are clearly erroneous. *Id.*

## IV.     Discussion

Iron Horse argues that the Bankruptcy Court erred by determining that the Beaches were eligible for Chapter 13 bankruptcy. Doc. 10 at 13–28. As discussed below, I disagree. *Infra* Section IV.A. The Beaches argue that Iron Horse was precluded from challenging their

5

eligibility. Doc. 12 at 9–10. Also, as discussed below, I disagree. *Infra* Section IV.B. Because I agree with the Bankruptcy Court's eligibility determination, I recommend that the Court affirm the Bankruptcy Court's decision.

### A.    The Bankruptcy Court correctly ruled that the Beaches were eligible for Chapter 13 bankruptcy.

Iron Horse argues that the Bankruptcy Court erred in three ways when determining that the Beaches were eligible to file for Chapter 13 bankruptcy. First, Iron Horse argues that the Bankruptcy Court erred by ruling that a specific debt (Proof of Claim #10) was unliquidated. Doc. 12 at 15–25. Second, Iron Horse argues that the Bankruptcy Court erred by ruling that the Beaches did not exceed the debt limit for noncontingent, liquidated, unsecured debts. *Id.* at 25–26. Third, Iron Horse argues that the Bankruptcy Court erred by ruling that the eligibility debate was "academic." *Id.* at 26–28. The Beaches defend the Bankruptcy Court on all three points. Doc. 12 at 2–9. Reviewing *de novo*, I agree with the Beaches that the Bankruptcy Court did not err. *See Barcal v. Laughlin (In re Barcal)*, 213 B.R. 1008, 1011 (B.A.P. 8th Cir. 1997) (eligibility determinations are reviewed *de novo*).

Eligibility for Chapter 13 bankruptcy is governed by 11 U.S.C. § 109(e)—as was in effect at the time the bankruptcy petition was filed. 11 U.S.C. § 109(e). The Beaches filed their petition on June 18, 2021. App'x at 1. On June 18, 2021, married debtors were only eligible for Chapter 13 bankruptcy if they owed "noncontingent, liquidated, unsecured debts that aggregate less than $419,275."[3] 11 U.S.C. § 109(e) (2010).

---

[3] 11 U.S.C. § 109(e) has since been amended raising the noncontingent, liquidated debt limit to $2,750,000, regardless of whether the debt is secured. 11 U.S.C. § 109(e) (2022). In 2024, the noncontingent, liquidated, unsecured debt limit will be reduced to $465,275. 11 U.S.C. § 109(e) (effective June 21, 2024).

In the Chapter 13 eligibility context, a "debt" is "(1) the actual obligation to pay as it exists in the contemplation of applicable law, or (2) the obligation to pay as asserted by the debtor in the bankruptcy schedules or otherwise." *In re Lambert*, 43 B.R. 913, 919 (Bankr. D. Utah 1984). "The term 'claim' was avoided because the Congress did not wish the Section 109(e) eligibility determination for Chapter 13 debtors to be predicated upon the mere demands of creditors." *Id.*

Still, when determining eligibility, the Court primarily looks to the debtor's schedules and proofs of claims, "checking only to see if these documents were filed in good faith." *Kanke v. Adams (In re Adams)*, 373 B.R. 116, 121 (B.A.P. 10th Cir. 2007) (citation omitted). "In so doing, however, the court should neither place total reliance upon a debtor's characterization of a debt nor rely unquestionably on a creditor's proof of claim, for to do so would place eligibility in control of either the debtor or the creditor." *Id.* The Court may look to "other evidence offered by a debtor or the creditor to decide only whether the good faith, facial amount of the debtor's liquidated and non-contingent debts exceed statutory limits." *Id.*

### i. Assuming without deciding that the Bankruptcy Court erred by finding that the alleged loan debt was unliquidated, such error is harmless because the debt is contingent.

Iron Horse argues that the Bankruptcy Court erred by ruling that the alleged debt was unliquidated. Doc. 10 at 15–25. The Beaches argue, consistent with the Bankruptcy Court's holding, that the debt is unliquidated. Doc. 2–8. Upon supplemental briefing,[4] Iron Horse argues

---

[4] Here, the question of whether the questionably documented, alleged loan debt was liquidated is complex and potentially novel. As such, I opted to decide the matter on the equally dispositive, simpler question of contingency. *See Flynn v. Bankowski (In re Flynn)*, 402 B.R. 437, 442 (1st Cir. 2009) (citing *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996)) (reviewing courts are not limited "to the controlling question of law raised by" appellants). Even if a debt is liquidated, it is not counted towards the Chapter 13 eligibility debt limit if it is contingent. *In re Lambert*, 43 B.R. at 924.

that the debt is also noncontingent.[5] Doc. 15 at 2–7. The Beaches disagree. Doc. 16 at 2–4.

Assuming without deciding that the alleged loan debt is unliquidated, such an error is harmless

because the alleged loan debt is contingent. *In re Lambert*, 43 B.R. at 924 ("If the disputed debt

is found to be contingent, it should not be so counted regardless whether or not it is liquidated.");

*see also* Doc. 15 at 7 (Iron Horse's concession that such an error would be harmless).

>   Federal Rule of Civil Procedure 61 states,

>   Unless justice requires otherwise, no error in admitting or excluding evidence—or
>   any other error by the court or a party—is ground for . . . vacating, modifying, or
>   otherwise disturbing a judgment or order. At every stage of the proceeding, the
>   court must disregard all errors and defects that do not affect any party's substantial
>   rights.

FED. R. CIV. P. 61; FED. R. BANKR. P. 9005 (Rule 61 "applies in cases under the [Bankruptcy]

Code").

A debt is noncontingent "if all events giving rise to liability occurred prior to the filing of

the bankruptcy petition." *In re Barcal*, 219 B.R. at 1013. A debt is contingent "if the debt is one

which the debtor will be called upon to pay only upon the occurrence or happening of an

extrinsic event which will trigger the liability of the debtor to the alleged creditor and if such

triggering event or occurrence was one reasonably contemplated by the debtor and creditor at the

---

[5] Iron Horse asserts that the Bankruptcy Court already ruled that the alleged loan debt was
noncontingent. Doc. 15 at 1–2. In the Bankruptcy Court's order deciding Iron Horse's Motion to
Dismiss, the Bankruptcy Court stated generally, "None of the debts under scrutiny are
contingent." App'x at 275. However, it is not clear to me that the alleged loan debt was "under
scrutiny" in that order, especially considering that the alleged loan was only mentioned in one
paragraph in conjunction with three other debts. App'x 278–79. The Beaches argue that the
Bankruptcy Court may have declined to rule on the alleged loan debt's contingency because such
a ruling was unnecessary. Doc. 16 at 2. Regardless, Iron Horse necessarily appeals the entire
order determining the Beaches' eligibility, not just the portions it chooses to present for appeal.
*See Flynn*, 402 B.R. at 442.

time the event giving rise to the claim occurred." *In re Lambert*, 43 B.R. at 922 (citation

omitted). "A debt is not automatically rendered 'contingent' solely by virtue of its being

disputed." *Id.* at 923.

> In *In re Albano*, the Northern District of Illinois explained,
>
> One useful conceptual distinction between contingent debts and disputed debts lies in the difference between conditions precedent and subsequent:
>
> 1.  Contingent debts (in the sense of dependency on a future event) involve no liability unless the condition precedent (e.g., a default by a principal) occurs.
>
> 2.  Disputed debts involve presumptive liability unless cut off by a condition subsequent (entry of judgment for the debtor).

*In re Albano*, 55 B.R. 363, 366 (N.D. Ill. 1985); *see also In re Barcal*, 219 B.R. at 1013 (quoting

this section of *In re Albano*).

> In *In re Mazzeo*, the Second Circuit said,
>
> In broad terms, the concept of contingency involves the nature or origin of liability. More precisely, it relates to the time or circumstances under which the liability arises. In this connection liability does not mean the same as judgment or remedy, but only a condition of being obligated to answer for a claim.

*Mazzeo v. United States (In re Mazzeo)*, 131 F.3d 295, 303 (2d Cir. 1997) (quotation and citation

omitted).

A pending judicial determination of liability is not sufficient to render a debt contingent.

*In re Faulhaber*, 269 B.R. 348, 354 (Bankr. W.D. Mich. 2001). In most cases, a debt is

noncontingent even if a judge has not decided whether the debtor is liable for the debt. *Id.* For

example, a taxpayers' obligation to pay taxes becomes a noncontingent debt upon nonpayment of

taxes. *In re Mazzeo*, 131 F.3d at 303. The taxpayers' obligation to pay is not contingent on the

taxing body attempting to collect the unpaid taxes via judicial or administrative process. *Id.*

"The fact that a debtor disputes a debt or has potential defenses or counterclaims that might

reduce a creditor's actual collection does not render a debt contingent." *In re Green*, 574 B.R. 570, 577 (Bankr. E.D.N.C. 2017) (citation omitted).

When money is not owed until a subsequent event occurs, the debt is contingent even if the debt is the subject of litigation. *C.f. In re Lambert*, 43 B.R. at 923. For example, in *In re Baird*, a creditor filed a lawsuit for, in relevant part, a breach of contract against the debtor and a third-party company for which the debtor was a controlling shareholder. *In re Baird*, 228 B.R. 324, 326–27 (Bankr. M.D. Fla. 1999). While breached contracts are generally noncontingent, in *In re Baird*, the breached contract was not. *Id.* at 331; *see, e.g.*, *In re Michaelson*, 74 B.R. 245, 250 (Bankr. D. Nev. 1987) (breached contracts, even when disputed, are typically noncontingent). The *In re Baird* bankruptcy court reasoned that the debtor was not a party to the contract. *In re Baird*, 228 B.R. at 331. In other words, the debtor never agreed to pay the debt, and it had not "been deemed owed by operation of law." *Id.* The bankruptcy court therefore held that the alleged debt was contingent because it had not been established that the debtor actually "owed" the creditor. *Id.*

The quintessential noncontingent debt is the case of "a guarantor of a promissory note executed by a third party, where both the creditor and the guarantor knew that the liability of the guarantor would be triggered if and when the third party defaulted." *In re Lambert*, 43 B.R. at 922. Another example is "the commission of an alleged wrongdoing, where it is presumed to have been contemplated by the parties that the alleged tortfeasor would be liable only if and when his act or omission were established as a tort and damages determined by a competent tribunal." *Id.*

Here, the alleged loan debt is contingent. A facial review of Iron Horse's Proof of Claim #10 does not show that the Beaches are obligated to repay Iron Horse. *See In re Lambert*, 43

10

B.R. at 919 (defining a debt). Other than the self-serving statements contained in Proof of Claim #10, there is no evidence of a contract between the Beaches and Iron Horse.[6] *See In re Michaelson*, 74 B.R. at 250 (breached contracts are typically noncontingent). There is no indication that the Beaches agreed, even orally, to repay Iron Horse. There is no indication that the Beaches agreed to an interest rate. There is no description of the terms of this alleged loan. There is no description of under what circumstances, if any, that the Beaches would be expected to repay such a large sum. *See*, *e.g.*, *In re Whittaker*, 177 B.R. 360, 365 (Bankr. N.D. Fla. 1994) (oral agreement to repay a loan "when [financially] able" was contingent on debtor becoming able to pay). There is no statutory obligation for the Beaches to pay Iron Horse. *See In re Mazzeo*, 131 F.3d at 303 (statutory obligations to pay are generally noncontingent). Based on the information before the Court, the only basis debtors would be obligated to repay the alleged loan debt is if the state court decided, presumably under a rule of equity, that debtors were obliged to do so.[7] As such, the alleged loan debt is contingent on the state court's determination that the Beaches are obligated to pay the debt. *Id.* ("[C]ontingency involves the nature or origin of liability. . . . [L]iability does not mean the same as judgment or remedy, but only a condition of being obligated to answer for a claim.").

---

[6] As the Bankruptcy Court noted, "This dispute is a good example of why the statute of frauds is still a part of New Mexico's common law. A written agreement, signed by the parties, would have been immensely helpful." App'x at 658 n.6.

[7] The Beaches conceded that the debt should be allowed by deciding not to object and adding the claim to their schedule. *In re Lambert*, 43 B.R. at 919 (A debt is "the obligation to pay as asserted by the debtor in the bankruptcy schedules."). The Beaches noted that they chose not to object to preserve resources and because of the Bankruptcy Court's comment that the debt was unliquidated. App'x at 622. The Beaches consistently scheduled the alleged loan debt as "contingent," "unliquidated," and "disputed." App'x at 46 (Beaches' initial schedule E/F); *Id.* at 178 (first amended schedule E/F).

Under most circumstances, a pending judicial determination is insufficient to render a debt noncontingent. *In re Faulhaber*, 269 B.R. at 354. This case is different. Much like the debtor in *In re Baird*, the Beaches are not obligated to pay the debt unless a court decides otherwise. *In re Baird*, 228 B.R. at 331. In *In re Baird*, a debt based on a breach of contract claim was contingent because the debtor was not a party to the contract even though the creditor alleged in state court that the debtor was liable for the breach of contract. *Id.* at 329–31. Similarly, here, there is a pending state court case alleging that the Beaches are obligated to pay the debt. But also like *In re Baird*, there is no facial justification for that obligation. In both cases, there is no basis for "presumptive liability," and the state court's judgment is the only "condition precedent" that could establish liability. *See In re Albano*, 55 B.R. at 366. As the Beaches point out, the state court case was pending for almost two years. Doc. 12 at 4. The case was tried over multiple days. *Id.* After which, the state court judge took the matter "under advisement." *Id.* The matter was held "under advisement for over four (4) months before the bankruptcy stayed the case." Doc. 16 at 3. While not dispositive—as the Beaches allege—these circumstances indicate that liability is more complicated than Iron Horse portrays. *See* Doc. 15 at 3. Iron Horse is correct that "[n]oncontingent liability does not mean the same thing as 'judgment' or 'remedy.'" Doc. 14 at 4. But here, the record indicates that a judgment is the *only* basis in which the Beaches would be obligated to pay in the first place. As such, the Beaches' obligation to pay Iron Horse, if any, is contingent upon the state court's determination that the money is actually "owed."

To hold otherwise would inappropriately put debtors' eligibility solely in Iron Horse's control. Courts repeatedly caution against predicating eligibility "upon the mere demands of creditors," *In re Lambert*, 43 B.R. at 919, or relying "unquestionably on a creditor's proof of

claim," *In re Adams*, 373 B.R. at 121. Iron Horse argues that to rule against it would instead put total control of eligibility into the Beaches' hands. Doc. 13 at 8. I disagree. The basis for excluding the alleged loan debt is not solely because the Beaches dispute the debt. Instead, Iron Horse itself did not provide enough facts to support the assertion that the Beaches are obligated to pay it, even when its claim is only facially reviewed. Iron Horse's position requires this Court to rely unquestionably on Iron Horse's conclusory characterization of the debt as a "loan" without factual support. Indeed, Iron Horse's Proof of Claim raises more questions than answers. For example, Iron Horse attached three checks to the claim, but the checks are made out to different entities, and none of the checks are made out to the Beaches. Why? Iron Horse asserts that the Beaches still owe $62,002.31 on the alleged loan. Does this balance include interest? Over the five-year period, did the Beaches allegedly pay just $2,147.69 on their alleged $64,150 loan? What was the agreed rate of payment, if any? Were the Beaches sent invoices, receipts, payment stubs, or any other accounting? Iron Horse includes interest in its ultimate claim for $71,767.67. Did the Beaches agree to an interest rate? Is the interest rate statutory? Did Iron Horse unilaterally decide an interest rate? As noted, *supra* section I, Iron Horse did not attach any writing that evidenced its alleged loan aside from the three checks. Why was Iron Horse—a business—willing to loan individuals $64,150 without a written agreement? Why was there no paper trail of the agreement, payments, repayment terms, interest rate, or otherwise?  As the Bankruptcy Court stated, the alleged loan is "shrouded in mystery." App'x at 658. The primary support for this loan—at least, that is available to this Court—is Iron Horse's contested word. Given the state of the record, including the alleged loan debt in the Beaches' noncontingent, liquidated, unsecured debt limit would impermissibly place the Beaches' eligibility completely within Iron Horse's control. *In re Lambert*, 43 B.R. at 919; *see In re Adams*, 373 B.R. at 121.

13

For the above reasons, I therefore find that the alleged loan debt is contingent.

### ii. The Bankruptcy Court correctly ruled that the Beaches did not exceed the noncontingent, liquidated, unsecured debt limit for Chapter 13 eligibility.

Iron Horse argues that the Bankruptcy Court erred by ruling that the Beaches were under the debt limit for noncontingent, liquidated, unsecured debts because it did not include the alleged loan debt (Proof of Claim #10) in the calculation. Doc. 10 at 25–26; *see* 11 U.S.C. § 109(e). The Beaches argue that the alleged loan debt was properly excluded. Doc. 12 at 2–8. Because I find that the alleged loan debt is contingent, I agree with the Beaches that the debt should not be included in the calculation of their noncontingent, liquidated, unsecured debts. Therefore, the Beaches did not exceed the eligibility debt limit.

On the date the Beaches filed for bankruptcy, § 109(e) required debtors to have "noncontingent, liquidated, unsecured debts that aggregate less than $419,275." 11 U.S.C. § 109(e) (2010). "Noncontingent," "liquidated," and "unsecured" each have their own distinct meaning under § 109(e). *In re Lambert*, 43 B.R. at 921.

If the alleged loan debt ($71,767.67), or even the alleged unpaid balance ($62,002.31), was added to the Beaches' debt total, they would exceed the statutory noncontingent, liquidated, unsecured debt limit. *See* 11 U.S.C. § 109(e) (setting debt limit at $419,275). According to the Bankruptcy Court, the Beaches' noncontingent, liquidated, unsecured debts totaled $371,521.60. App'x at 282. Adding the alleged loan debt would bring the total to $443,289.27 ($24,014.27 over the eligibility debt limit), or if only the unpaid balance is used, to $433,523,91 ($14,248.91 over the eligibility debt limit). Yet, because the alleged loan debt is not included, the Beaches did not exceed the debt limit.

Iron Horse also complains that the Bankruptcy Court erred by not including a debt from Crowley & Gribble, P.C. totaling $42,000 for legal fees. Doc. 10 at 25–26. The Crowley &

Gribble debt is inconsequential to the questions before this Court because it is not dispositive. As noted in the preceding paragraph, if the alleged loan debt is included, the Beaches exceed the eligibility debt limit even without the Crowley & Gribble debt. If the alleged loan debt is excluded, even with the Crowley & Gribble debt added, the Beaches would still be $5,753.40 under the eligibility debt limit. As such, the inclusion or exclusion of the Crowley & Gribble debt does not affect "any party's substantial rights." *See* FED. R. CIV. P. 61 (harmless error).

The Bankruptcy Court did not err by excluding the alleged loan debt because the debt is contingent. *See supra* Section IV.A.ii. As such, the Beaches did not exceed the noncontingent, liquidated, unsecured debt limit for Chapter 13 eligibility. *See* 11 U.S.C. § 109(e) (2010).

### iii. The Bankruptcy Court's comment that the eligibility debate is "academic" is not appealable.

Iron Horse argues that the Bankruptcy Court erred by ruling that the eligibility debate was "academic" because Iron Horse would benefit from the Beaches refiling. Doc. 10 at 26–28. The Beaches argue that this ruling was not an error because they are free to refile their Chapter 13 bankruptcy petition under the new, raised debt limits. Doc. 12 at 8–9; *see* 11 U.S.C. § 109(e) (2022). I find that the Bankruptcy Court's comment that the eligibility fight was "academic," is not appealable.

"[C]ritical comments made in the course of a trial court's wonted functions—say, factfinding or opinion writing—do not constitute a sanction and provide no independent basis for an appeal." *Williams v. United States (In re Williams)*, 156 F.3d 86, 92 (1st Cir. 1998). "[N]ot every negative comment or observation from a judge's pen about an attorney's conduct or performance" is appealable. *Butler v. Biocore Medical Technologies, Inc.*, 348 F.3d 1163, 1168 (10th Cir. 2003) (citation and quotation omitted). "[O]nly orders finding misconduct are appealable." *Id.* The "court has ample discretion to comment, sternly when necessary, on a

lawyer's performance in order to assure the proper conduct of proceedings in his or her court."

*Id.* at 1169 (citations and quotations omitted).

When the parties refer to the Bankruptcy Court's "ruling" that the eligibility debate was

"academic," the parties are referring to the final analysis paragraph from the Bankruptcy Court's

order on Iron Horse's Motion to Reconsider. In total, the Bankruptcy Court said:

> Finally, the eligibility fight is academic at this point. After Debtors filed this case,
> Congress changed the eligibility requirements for chapter 13. Now, all individuals
> with regular income who owe less than $2,750,000 in noncontingent, liquidated
> debts (both secured and unsecured) are eligible. If this case were dismissed on
> eligibility grounds, Debtors could simply refile and would be more than $1,750,000
> under the new debt ceiling. Nothing would be accomplished except a waste of time
> and attorney fees. Debtors have argued that Iron Horse is "running up the fees" in
> this case to punish them. Iron Horse's continued fight about eligibility is consistent
> with that view.

App'x at 661(footnote omitted).

This paragraph is merely commentary without legal force. The parties address this

commentary as if the Bankruptcy Court ruled that the eligibility determination is moot. It did not.

Earlier in the opinion, the Bankruptcy ruled on the merits of the eligibility question. *Id*. at 655–

60. This paragraph is not an alternative holding nor connected to a holding. Instead, this

paragraph is an informal reprimand, well shy of a finding of misconduct. *See Butler*, 348 F.3d at

1168 ("[O]nly orders finding misconduct are appealable."). The Bankruptcy Court, here, and

throughout its opinions, critiqued Iron Horse's litigation tactics. *See, e.g.*, App'x at 579 ("A

typical chapter 13 case in this district costs about $5,000 in attorney fees. Iron Horse has forced

Debtors to spend ten times that amount."). This paragraph is similarly a complaint regarding Iron

Horse's allegedly wasteful litigation tactics. While it is clear why Iron Horse would disagree

with the Bankruptcy Court's characterizations, the paragraph is not germane to any of the

Bankruptcy Court's holdings. The Bankruptcy Court's criticism is not appealable. *See In re*

16

*Williams*, 156 F.3d at 92.

For the above reasons, the Bankruptcy Court correctly ruled that the Beaches are eligible for Chapter 13 bankruptcy.

**B.      Iron Horse is not precluded from challenging the Beaches' eligibility on appeal.**

The Beaches argue that the determination of their eligibility "is *res judicata* following confirmation of chapter 13 plan." Doc. 12 at 12. Iron Horse disagrees that they are precluded from appealing the eligibility determination. Doc. 13 at 12–13. I agree with Iron Horse.

Some courts use *res judicata*, also known as claim preclusion, and the statutory binding effect of 11 U.S.C. § 1327(a) interchangeably. *See, e.g.*, *Carvalho v. Fed. Nat'l Mortgage Ass'n (In re Carvalho)*, 335 F.3d 45, 49 (1st Cir. 2003); *Duplessis v. Valenti (In re Valenti)*, 310 B.R. 138, 145 (B.A.P. 9th Cir. 2004); *In re Lochamy*, 197 B.R. 384, 386 (Bankr. N.D.Ga. 1995). The parties here do the same. Other courts describe the binding effect of § 1327(a) as a "res judicata effect." *See, e.g.*, *Talbot v. Richman (In re Talbot)*, 124 F.3d 1201, 1210 n.11 (10th Cir. 1997); *Fraser v. CitiMortgage, Inc. (In re Fraser)*, 599 B.R. 830, 834–37 (Bankr. W.D.Pa. 2019). Yet, in addition to the binding effect of § 1327(a), common law *res judicata* principles still apply in the bankruptcy context. *See Kelley v. South Bay Bank (In re Kelley)*, 199 B.R. 698, 702 (B.A.P. 9th Cir. 1996). Importantly, "the statutory formulation of binding effect in § 1327(a) is broader than the res judicata effect of an ordinary judgment in the federal courts." Keith M. Lundin, LUNDIN ON CHAPTER 13, § 120.2, at ¶ 5,

https://www.lundinonchapter13.com/Content/Section/120.2 (last visited Feb. 1, 2024); *see also Universal Am. Mortg. Co. v. Bateman (In re Bateman)*, 331 F.3d 821, 830 (11th Cir. 2003) (explaining the differences between common law claim, issue, and § 1327(a) preclusion).

*Res judicata* refers to "giving the judgment in the bankruptcy case preclusive effect in another case." *Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1200 (9th Cir. 2008). In contrast, 11 U.S.C. § 1327(a) states, "[t]he provisions of a confirmed plan bind the debtor and each creditor," without regard to whether the lawsuit is the same.

In *In re Welch*, the Sixth Circuit explained,

> Preclusion under § 1327 is somewhat harsher than common law issue preclusion, however. At common law the litigation of an issue is precluded only if that issue was actually litigated and decided and if the determination of that issue was necessary to the judgment in a previous action between the parties. . . . Under § 1327, as it has been interpreted, an issue is precluded if it *could have been decided* at confirmation, whether or not it was actually decided.

*Cline v. Welch (In re Welch)*, No. 97-5080, 1998 WL 773999, at *2 n.1 (6th Cir. 1998) (unpublished table decision) (citation omitted).

While the parties did not cite to § 1327(a), the parties exclusively cite cases where the *res judicata* effect was derived from §1327(a), not common law *res judicata. See In re Setelin*, 218 B.R. 818, 820–21 (E.D.Va. 1998); *In re Lochamy*, 197 B.R. at 386–87.[8] Further, this case is a direct appeal, and the parties do not discuss three requisites for common law *res judicata*.[9] *See Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 (10th Cir. 1999) (common law "[c]laim preclusion requires: (1) a judgment on the merits in the earlier action; (2) identity of the parties or their privies in both suits; and (3) identity of the cause of action in both suits"). Therefore, I limit my

---

[8] Iron Horse also cites *Lamar v. United States (In re Lamar)*, 111 B.R. 327 (D. Nev. 1990). However, *Lamar* did not address preclusion—under common law *res judicata* or § 1327(a).

[9] In the unlikely event that the Beaches intended to assert common law *res judicata*, the defense plainly does not apply as this matter is not a different lawsuit. *See Espinosa*, 553 F.3d at 1200 (*res judicata* does not apply within the same lawsuit).

discussion to the binding effect of § 1327(a), as the parties seemingly intended, and not common law *res judicata* principles.

Under § 1327(a), after a bankruptcy plan is confirmed, a creditor generally may not file a motion to dismiss challenging a debtor's eligibility. *United States v. Edmonston*, 99 B.R. 995, 998–99 (E.D. Cal. 1989); *Jones v. United States (In re Jones)*, 134 B.R. 274, 277–81 (N.D. Ill. 1991); *In re Jarvis*, 78 B.R. 288, 289 (Bankr. D. Ore. 1987). Even a motion to dismiss filed a few days before a confirmation hearing and not preserved at the confirmation hearing can preclude challenges to a debtor's eligibility. *In re Lochamy*, 197 B.R. at 386. In both instances, courts find that the creditors have "slept on their rights," by challenging eligibility so far into the proceedings. *Id.* at 387; *In re Setelin*, 218 B.R. at 820. In contrast, when a motion to dismiss based on ineligibility is filed well before a plan's confirmation, there is no basis for precluding the challenge under § 1327(a). *See In re Setelin*, 218 B.R. at 820. For example, in *In re Setelin*, a bankruptcy court held that an eligibility challenge was not precluded when a motion to dismiss had been filed three months prior to confirmation of the plan. *Id.*

Here, Iron Horse is not precluded from challenging eligibility. Iron Horse filed its Motion to Dismiss challenging eligibility over a year before the plan was confirmed. Doc. 13 at 13. Iron Horse then filed a Motion to Reconsider the decision denying the Motion to Dismiss a month before the plan was confirmed. *Id.* Iron Horse more closely resembles the creditor in *In re Setelin*, who challenged eligibly three months before the confirmation hearing, than the creditor in *In re Lochamey* who waited until four days before the hearing and did not mention the motion at the confirmation hearing. The Beaches argue that Iron Horse's "failure to raise or preserve the issue on eligibility *at the confirmation hearing* waived the right to relitigate eligibility afterward, including this appeal." Doc. 12 at 13. Yet, the Beaches and the Bankruptcy Court extensively

19

criticized Iron Horse for its overzealous litigation. *See, e.g.*, App'x at 617 (accusing Iron Horse

of "scorched earth" litigation tactics); App'x at 661 (accusing Iron Horse of "running up the

fees"). It is inconsistent that the Beaches now seek to penalize Iron Horse for not challenging

eligibility at the confirmation hearing when the Bankruptcy Court had already decided the issue

twice. Like the creditor *In re Setelin*, Iron Horse is far from guilty of sleeping on its rights. *See In*

*re Setelin*, 218 B.R. at 820

     The Beaches argue that Iron Horse "could have and should have" sought permission to

file an interlocutory appeal of the Motion to Reconsider its Motion to Dismiss. Doc. 12 at 12.

Yet, the Beaches do not point to any law indicating that Iron Horse had an affirmative duty to

seek an interlocutory appeal. *See Allen v. Hadden*, 738 F.2d 1102, 1106 (10th Cir. 1984) ("The

right to take an authorized interlocutory appeal is permissive, not mandatory."). Iron Horse was

not obligated to request to file an interlocutory appeal.

     For these reasons, I find that Iron Horse was not precluded from challenging the debtors'

eligibility on appeal.

## V.    Request for Oral Argument

     The Beaches requested oral argument. Doc. 12 at 10. Iron Horse did not. Doc. 10 at 31.

FED. R. BANKR. P. 8019 states,

> Oral argument must be allowed in every case unless the district judge—or all the
> BAP judges assigned to hear the appeal—examine the briefs and record and
> determine that oral argument is unnecessary because
>
> (1) the appeal is frivolous;
> (2) the dispositive issue or issues have been authoritatively decided; or
> (3) the facts and legal arguments are adequately presented in the briefs and record,
> and the decisional process would not be significantly aided by oral argument.

Here, oral argument is unnecessary. The briefing, the transcripts of hearings held before the Bankruptcy Court, and the remainder of the record were sufficient to decide the case. The decisional process would not be significantly aided by oral argument. *See* FED. R. BANKR. P. 8019. As such, the Beaches' request for oral argument is denied.

## VI.   Recommendation

Iron Horse argues that the Bankruptcy Court erred in deciding that the Beaches were eligible for Chapter 13 bankruptcy. Specifically, Iron Horse argues that:

(1) the Bankruptcy Court erred by ruling that a specific debt (Proof of Claim #10) was unliquidated;

(2) because of that liquidity error, the Bankruptcy Court erred by ruling that the Beaches were under the noncontingent, liquidated, unsecured debt limit for Chapter 13 eligibility; and

(3) the Bankruptcy Court erred by ruling that the eligibility debate was "academic." Doc. 10 at 13–28. Additionally, the Beaches argue that Iron Horse was precluded from challenging the Beaches' eligibility on appeal by *res judicata*. Doc. 12 at 8–9.

I find that:

(1) if the Bankruptcy Court erred in ruling that the relevant debt was unliquidated, the error is harmless because the debt is contingent;

(2) because the debt is contingent, the Bankruptcy Court correctly held that the Beaches were under the noncontingent, liquidated, unsecured debt limit for Chapter 13 eligibility;

(3) the Bankruptcy Court's comment that the eligibility debate was "academic" is not appealable; and

(4) Iron Horse is not precluded from challenging the Beaches' eligibility on appeal.

21

I therefore recommend that the Court affirm the Bankruptcy Court's decision that the Beaches were eligible for Chapter 13 bankruptcy.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  Written objections must be both timely and specific.  *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court.  *Id*.  In other words, if no objections are filed, no appellate review will be allowed.**

_____

JENNIFER M. ROZZONI
United States Magistrate Judge